INTERMOUNTAIN FARMERS ASSOCIATION, a Utah Corporation, Plaintiff and Appellant,

v.

Jim FITZGERALD, Defendant and Respondent.

No. 14723.

Supreme Court of Utah.

Jan. 24, 1978.

J. Thomas Greene, DeLyle H. Condie, Dorothy C. Pleshe, of Callister, Greene & Nebeker, Salt Lake City, for plaintiff and appellant.

Tom R. Blonquist, Salt Lake City, for defendant and respondent.

PALMER, District Judge:

This case was brought by the plaintiff to recover the amount due on open account for the sale of feed to the defendant in the sum of $41,625.00 with interest and reasonable· attorney's fees.  This is an appeal from a money judgment in favor of the defendant and respondent, (defendant herein) on his counterclaim.

The defendant originally answered the plaintiff's complaint with a general denial.  Some months later the defendant was permitted by the trial court to file an amended answer and counterclaim for alleged injuries and death to defendant's dairy herd allegedly caused by toxic levels of urea, and alleged inconsistencies and deficiencies of protein in the feed sold by the plaintiff to the defendant.

There are five allegations made on the appeal as follows:

One, the plaintiff alleges that the court did not grant attorney's fees as provided in the contractual arrangement between the plaintiff and the defendant. The defendant has agreed that attorney's fees should have been allowed, thus there is no dispute on appeal on this item.

Two, the plaintiff alleges the instructions to the jury relating solely to the issue of punitive damages was prejudicial error.

Three, the instruction to the jury to the effect of a violation of a statute as it affects negligence was prejudicial error.

Four, plaintiff's Motion for a Directed Verdict should be granted and was error on the part of the court not to have granted as requested by the plaintiff.

Five, prejudicial error was committed in the admission of evidence.

It is not necessary for this Court to treat the first point of appeal by the plaintiff since the defendant has agreed that an award of a reasonable attorney's fee should have been made.

■ The next point of contention is that evidence received was on its face objectionable, but was allowed by the trial court for the purposes of relating, "solely to the issue of alleged punitive damage." It is the opinion of the Court that by allowing such evidence in without clarification was prejudicial error and the case should be reversed on this matter alone.

The Court's instruction number twenty (20) gave the following instruction:

You are instructed that *certain exhibits hereinafter enumerated* have been *offered and admitted into evidence* by the court as *bearing upon the question of notice* to the plaintiff of a deficiency in its feed. You are instructed that *said exhibits should not be considered for any other purpose or as bearing upon any other issue and do not constitute proof of any other claim* made by the counterclaimant in this case. [Emphasis added.]

However, after giving the instruction, the trial court failed to advise the jury as to the numbers of the exhibits that were so restricted. Thus, the jury reviewed all the exhibits without restriction, when in fact some of the exhibits should have been restricted to the issue of punitive damages. The admonition of the court as provided in instruction number twenty was not sufficient to overcome the prejudicial error created by allowing such evidence in.

The transcript and the abstract were filled with objections of the plaintiff in an attempt to keep such exhibits out because they were so remote in time and place as not to be pertinent to this plaintiff. In reading the abstract and the transcript, this Court can find no direct evidence of the plaintiff's feed being harmful; no tests by state chemists of any toxicity or existence of urea in the feed bought by the defendant from the plaintiff's Spanish Fork Branch. The only contaminated food came from different branches and this feed was not sold to the defendant. As a matter of fact, during the time plaintiff's feed was fed to the defendant's cattle, the defendant's cattle's milk production increased from 372 pounds less than the Salt Lake County yearly average production per cow to 1,657 over the yearly average of the Salt Lake County production per cow.

■ The next matter appealed from was the instruction to the jury on the issue of negligence constituting prejudicial error. The court instructed that "the feed in question was *manufactured* in violation of the statute, there was negligence per se *as a matter of law.*"

This Court has long held that the violation of a statute does not necessarily constitute negligence per se and may be considered only as evidence of negligence, and thus the instruction of the court is prejudicial error and should be reversed on that ground. See *Thompson v. Ford Motor Co.,* 16 Utah 2d 30, 395 P.2d 62 (1964). Justice Crockett, in the *Thompson* case, noted that violation of a safety standard set by statute

or ordinance may be regarded as "prima facie evidence of negligence, but is subject to justification or excuse if the evidence is such that it reasonably could be found." See also *White v. Shipley*, 48 Utah 496, 160 P. 441 (1916); *Klafta v. Smith*, 17 Utah 2d 65, 404 P.2d 659.

The *Thompson* case is the leading case in the State of Utah. See the citation set forth in more detail in the *Thompson* case.

■ The next point cited as error of the trial court was that evidence offered and received was insufficient as a matter of law to prove that the plaintiff's negligence proximately caused the defendant-counter-claimant's damage.

A careful reading of the transcript and the abstract substantiates the plaintiff's contentions. Any food shown to be contaminated in the evidence was from plants other than the Spanish Fork Plant where the defendant purchased its feed from the plaintiff. There was no showing of any causal connection between the alleged harmful feed and the death, sickness or loss of production of the defendant's dairy cattle. As a matter of fact, it was more reasonable to presume that any death, sickness or loss of production was caused from the feeding of the defendant's own feed since no contaminated feed was shown to have been purchased from plaintiff's plant by the defendant. The counterclaim should have been dismissed on plaintiff's motion after the presentation of all the evidence by the defendant on its counterclaim.

■ This Court has recognized that a directed verdict is proper where the proof fails to disclose any controversies as to controlling factor where there is lack of proof of one or more material elements in a cause of action asserted. See *Flynn v. W. P. Harlin Construction Co.*, 29 Utah 2d 327, 509 P.2d 356 (1973).

In this case, there was no direct evidence produced by the defendants to show that the plaintiff's dairy feed consumed by the defendant's cows, contained an excess of urea, deficiency of protein, or any inconsistencies in the amount of protein that would have caused the alleged damage.

In addition thereto, there is no evidence in the record to justify a conclusion that the feed caused the death, diminished milk supply, or any other damage to the defendant's cattle. Circumstantial evidence presented was totally lacking.

■ The appellant's last claim of error is that prejudice was committed in the admission of evidence. The record is clear that the court allowed defendant to read in material contained in exhibits that had been previously denied admission. Rule 70 of the Utah Rules of Evidence prohibits proof of contents of a writing, other than by the writing itself, with few exceptions. None of said exceptions are noted here.

The record reveals that general revenue records, magazine articles, and other such evidence were not allowed in, but were used as the basis of testimony but were never marked as exhibits or introduced in evidence.

In the *Watson Land Co. v. Rio Grande Oil Co.*, 61 Cal.App.2d 269, 142 P.2d 950, the court therein stated:

The testimony of defendant's president, that the oil his company was producing had a gravity of less than 14, has no probative value, in view of facts that, as revealed by his subsequent answers, he did not speak of his own knowledge, but based his statement on the "run tickets" of the refineries which bought the products of his wells, and there was no showing of the basis on which the run tickets were computed.

The conduct of the defendant, reading the exhibits that had been excluded or refused, circumvented the very rule of law provided in Rule 70 of the Utah Rules of Evidence. For though the exhibits were refused, the unsubstantiated information contained in those exhibits were nevertheless presented directly to the jury for its

full consideration by the defendant's verbatim reading of the exhibits.

For these reasons set forth above, this Court affirms the judgment for the plaintiff granted below in the sum of $41,625.00 plus interest and attorney's fees. The interest and attorney's fees to be determined below.

For the reasons stated above, this Court reverses and dismisses the case for every other purpose except the setting of attorney's fees and determining the amount of interest.

ELLETT, C. J., and CROCKETT, J., concur.

MAUGHAN and WILKINS, JJ., concur in result.

HALL, J., having disqualified himself, does not participate herein.